IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terry Wilkie, ) | C/A No. 0:10-2713-TLW-PJG |
|              Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) Commissioner of Social Security, ) | |
|              Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Terry Wilkie ("Wilkie"), brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In January 2008, Wilkie applied for DIB, alleging disability beginning January 13, 2007. Wilkie's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 11, 2009, at which Wilkie, who was represented by Michael B. Freeman, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on February 23, 2010 denying benefits and concluding that Wilkie was not disabled. (Tr. 66-76.)

Wilkie was forty-one years old at the time of his alleged disability onset date. (Tr. 75.) He has a high-school education and vocational training in welding and blueprint reading and has past

relevant work experience as a motor vehicle assembler. (Tr. 43, 134, 138.) Wilkie alleges disability since January 13, 2007 due to lower back and leg pain, arthritis, and generic bone disease. (Tr. 133.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 13, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
   * * *
3. The claimant has the following severe combination of impairments: bilateral knee osteoarthritis, degenerative disc disease, L5-S1 radiculopathy, and sensorimotor polyneuropathy (20 CFR 404.1520(c)).
   * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
   * * *
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). I find claimant can frequently lift 10 pounds, occasionally lift 20 pounds, and sit, stand, and walk for 6 hours each of an 8 hour work day. I also find claimant can frequently kneel, crouch, crawl, balance, and climb ramps and stairs, and occasionally stoop and climb ladders, ropes, and scaffolds. I further find claimant must avoid concentrated exposure to hazards.
   * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
   * * *
7. The claimant was born on [REDACTED], 1965 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
   * * *
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR 404.1569, 404.1569a).
>
> \* \* \*
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2007 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 68-76.) Wilkie filed an appeal and submitted additional evidence for consideration, some of which the Appeals Council admitted into the administrative record. On August 25, 2010, the Appeals Council denied Wilkie's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

   (1)   whether the claimant is engaged in substantial gainful activity;

   (2)   whether the claimant has a "severe" impairment;

   (3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

   (4)   whether the claimant can perform his past relevant work; and

   (5)   whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.



Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Wilkie raises the following issues for judicial review:[1]

I.  The ALJ erred in failing to properly evaluate the opinion evidence.

II. The ALJ erred in his RFC determination.

III. Where new evidence is submitted to the Appeals Council that is sufficiently material that it might have affected the Commissioner's final decision, the Meyer case requires that evidence be weighed. In this case there was such evidence, and it was not in fact weighed. Where there is new and material evidence submitted at the Appeals Council, and where that evidence might have affected the findings of the fact-finder, must the case be remanded so that the Commissioner can weigh that evidence?

IV. Where the Appeals Council committed a glaring factual error in its evaluation of the new evidence set before it, must the case be remanded?

(Pl.'s Br., ECF No. 16; Pl.'s Second Supp'l Br., ECF No. 29 at 2, 8.)

**DISCUSSION**

**A.    Opinion Evidence**

Wilkie first argues that the ALJ erred in rejecting the opinions of Dr. Phillip LaTourette, a treating physician, and Dr. Phillip Esce, an examining physician.[2] Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a

---

[1] After the parties submitted briefs in this case, the United States Court of Appeals for the Fourth Circuit issued an opinion impacting the third and fourth issues originally posited by Wilkie in this judicial review. The court permitted the parties to supplement their briefs based on the Fourth Circuit's new decision, and Wilkie recast his third and fourth issues accordingly.

[2] Although Wilkie refers to Dr. Esce as his treating neurosurgeon, it appears from Dr. Esce's opinion that he examined Wilkie on one occasion in May 2007, which formed the basis for his December 2009 opinion. Therefore, Dr. Esce does not appear to be a treating physician; however, even if Dr. Esce were considered a treating physician, for the reasons discussed below, Wilkie has failed to demonstrate that the ALJ erred in evaluating his opinion.

non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[3] Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

### 1.    Dr. LaTourette

It appears that Dr. LaTourette, a pain specialist, treated Wilkie from July 2007 through July 2008. On March 28, 2008, Dr. LaTourette completed a questionnaire in which he responded "yes" to the following questions:

---

[3] The Social Security regulations provide that *all medical opinions*, which includes opinions of examining doctors and of non-examining state agency doctors, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(d), (f).

2. Does Terry Wilkie have such a significant limitation in the ability of each hand to manipulate, handle and work with small objects that Mr. Wilkie would have difficulty doing so on anything but an occasional basis?

\* \* \*

4. Must Terry Wilkie avoid stooping?

\* \* \*

8. If Terry Wilkie attempted to work on an 8 hour day, 5 day per week basis, would Mr. Wilkie most probably have to rest away from the work station for significantly more than an hour during the working portion of the work day?

9. If Terry Wilkie attempted to work on an 8 hour day, 5 day per week basis, would Mr. Wilkie most probably have to miss more than 3 days of work per month?

10. If Terry Wilkie attempted to work on an 8 hour day, 5 day per week basis, is it most probable that Mr. Wilkie would have problems with attention to and concentration sufficient to frequently interrupt tasks during the working portion of the work day?

(Tr. 364-65.) In response to a question asking whether Wilkie could "stand and walk, in combination, for more than a few minutes during the work day," Dr. LaTourette stated Wilkie needed a functional capacity assessment. (Tr. 364.) Regarding Wilkie's ability "to make simple work-related decisions," "to respond appropriately to supervision, co-workers, and usual work situations," and "to deal with changes in a routine work setting," Dr. LaTourette stated that he did not know. (Id.) Dr. LaTourette also stated that Wilkie's diagnoses of facet arthropathy and lumbar radiculopathy "underlie the above impairments." (Tr. 365.) Finally, Dr. LaTourette did not respond to a question asking whether Wilkie could engage in sedentary work or to a question asking for the bases for his opinions. (Tr. 364, 365.)

The ALJ considered this opinion and gave it no weight, stating the following:

> Claimant has no upper extremity impairment or impairment which would reasonably be expected to cause manipulative limitations. Dr. LaTourette's assertion that claimant had substantial manipulative limitations calls into question Dr. LaTourette's familiarity with claimant's case.[4] Also, though Dr. LaTourette reported claimant

---

[4]  Dr. LaTourette also reported he [] did not have the knowledge to answer several questions on the pertinent questionnaire.

must avoid stooping, his treatment notes show he never gave claimant such a restriction while treating him. Furthermore, Dr. Barnhill reported claimant was able to squat and stoop (Exhibit 16F, Page 9), Dr. Barnhill's examinations showed claimant was generally able to come close to touching his toes (Exhibit 13F, Page 2; Exhibit 16F, Pages 3, 5, 7, and 9), and Dr. LaTourette's own examination in June 2008 demonstrated full thoracolumbar ranges of motion (Exhibit 22F, Page 19). Additionally, though Dr. LaTourette reported claimant's concentration would be frequently interrupted during the day, Dr. Barnhill reported good concentration (Exhibit 8F; Exhibit 16F, Page 7), claimant reported his conditions did not affect his ability to concentrate in March 2008 (Exhibit 9E), no problems with concentration were observed during teleclaim (Exhibit 1E), and claimant testified he used the internet for 1-2 hours per day. Moreover, though Dr. LaTourette reported claimant would be likely to miss 3 or more days of work per month, the frequency with which claimant sought treatment does not support such a limitation, and the record reveals no emergent treatment. Also, I note that Dr. LaTourette gave basically no description of claimant's limitations or serious rationale for his opinions. He simply answered "yes" to a series of leading, legally significant questions ostensibly without expending significant time or effort. Lastly, Dr. LaTourette's statements are not consistent with his treatment notes wherein he stated it was "not clear to [him] why [claimant] continue[d] to have significant back and leg pain" and discharged claimant to his primary care physician. Exhibit 10F, Page 2.

(Tr. 73-74.) Wilkie attacks several of the reasons offered by the ALJ. Wilkie argues that the ALJ's decision was not based on substantial evidence, alleging that the ALJ selectively cited evidence in support of his decision while ignoring or rejecting contrary evidence.

Specifically, Wilkie challenges the ALJ's statement that Dr. LaTourette was unfamiliar with Wilkie's case, arguing that the manipulative limitations are supported by Wilkie's diagnosis of myofascial pain syndrome, records mentioning shoulder pain, and Wilkie's hearing testimony concerning his hand pain. The court observes that the ALJ noted reports of myalgias and myofascial pain syndrome; however, he noted that "such diagnoses appear[ed] rarely, and treatment notes reveal[ed] rare complaints of pain in places other than the back and legs or reports of myalgias." (Tr. 69.) Moreover, the ALJ rejected Wilkie's credibility with regard to his hand pain, stating that Wilkie "has no medically determinable impairment which could reasonably be expected to cause his alleged hand pain and limitations." (Tr. 72.)

Next, Wilkie challenges the ALJ's rejection of Dr. LaTourette's stooping limitation. Wilkie appears to argue that the ALJ considered selectively statements from Dr. Barnhill's treatment records without acknowledging the entire record and that there were other indications in the record supporting such a limitation, such as instances where Wilkie was noted to have tenderness to palpitation and not to have a full range of motion as well as prescriptions for Lortab.[5] Wilkie points out that he reported pain with bending and stooping and that Dr. Barnhill's examination notes stated that Wilkie "was able to squat and stoop and used a chair to get back up." (Tr. 359.) Wilkie further argues that Dr. Barnhill's notes indicate that during visits where he could almost touch his toes, Wilkie had positive straight leg raises and tenderness throughout his spine, and he points to records that indicate that Wilkie did not have a full range of motion. With regard to his concentration, Wilkie concedes that the record only supports a mild limitation in concentration, but that rejection of this opined limitation was insufficient alone to support rejecting Dr. LaTourette's entire opinion. Wilkie argues that the remaining reasons offered by the ALJ were unreasonable and not evidence-based. For example, Wilkie states that he sought medical treatment almost monthly for over a year, was prescribed narcotic pain medication, and completed a nerve conduction study indicating radiculopathy.

Alternatively, Wilkie argues that even if Dr. LaTourette's opinion is not given controlling weight, it should at least have been given great weight pursuant to SSR 96-2p.

Upon review of the parties' arguments, the medical evidence, and the ALJ's decision, Wilkie has failed to demonstrate that the ALJ improperly applied 20 C.F.R. § 404.1527(d) or SSR 96-2p in evaluating Dr. LaTourette's opinion. Although Wilkie may point to selective evidence in the

---

[5] Wilkie does not appear to challenge the ALJ's statement that Dr. LaTourette's treatment notes do not indicate that he restricted Wilkie from stooping.

medical record that may arguably support Dr. LaTourette's opinion, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  Accordingly, the court finds that Wilkie has failed to demonstrate that the ALJ's decision with regard to Dr. LaTourette's opinion is unsupported by substantial evidence or controlled by an error of law.  See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints); Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995) (approving an ALJ's rejection of physician's opinion that claimant had "severe" limitations in standing, walking, etc., in part, because the opinion was generic).

    **2.**     **Dr. Esce**

As noted above, it appears from Dr. Esce's opinion that he examined Wilkie on one occasion in May 2007, which formed the basis for his December 2009 opinion. On December 23, 2009, Dr. Esce indicated that Wilkie had been referred to him in 2007 by Dr. Barnhill to evaluate Wilkie's low back pain with radiculopathy. (Tr. 400.) Dr. Esce stated that he reviewed an MRI report and informed Wilkie that they could perform back surgery, but that there was only a fifty-percent chance that the surgery would improve his back pain, which Dr. Esce stated was a "very serious problem," due to the nature of Wilkie's pain. (Id.) Regarding Wilkie's limitations, Dr. Esce opined the following:

> I had real concerns about Mr. Wilkie trying to go back to work because he could not do any lifting or prolonged sitting.[6] Clinical examination showed that he walked abnormally and he exhibited a lot of discomfort with bending. Because of his MRI findings and clinical examination, it is likely that he would have been limited to no more than sedentary work with sedentary work defined as being able to stand or walk no more than 2 hours out of an eight hour work day. Still, it is likely that he would have needed to change positions very frequently, at least every 30 minutes. I am certain that he would have experienced interruptions to his concentration sufficient to frequently interrupt task, as a result of his chronic back pain. He could not lift any weight frequently. It is likely that he would need to rest away from the work station for greater than an hour out of the working portion of the work day. It is consistent with his condition that he would be absent from work more than 3 days per month.

(Id.) Dr. Esce stated that these limitations existed at least since his examination on May 1, 2007 and he believed that it was unlikely that they would have improved since that time. Finally, Dr. Esce observed that another doctor in his practice noted in February 2008 that he had reviewed an EMG, showing "some sensory motor polyneuropathy in [Wilkie's] lower extremities." (Id.)

---

[6] The court observes that Dr. Esce's treatment notes from May 2007 express concern about Wilkie "going back on the job," which appears to reference Wilkie's work as a motor vehicle assembler, which was described as medium exertional work. (Tr. 234, 43.)

The ALJ gave no weight to this opinion observing that (1) Dr. Esce appears to have only examined Wilkie once in May 2007; (2) unlike the state agency doctors, Dr. Esce did not review other evidence in the record; (3) although Dr. Esce opined that Wilkie would have to change positions every 30 minutes, Wilkie testified that he used the internet one to two hours per day; (4) like with Dr. LaTourette's opinion, the record did not support Dr. Esce's opinion that Wilkie's concentration would be frequently interrupted; (5) contrary to Dr. Esce's opinion that Wilkie could not lift any weight frequently, Wilkie reported shopping and fishing; and (6) the frequency with which Wilkie sought treatment and the fact that no emergent treatment was revealed by the record belied Dr. Esce's report that Wilkie would miss more than three days of work per month. (Tr. 74.)

Wilkie challenges most of these reasons, arguing that the ALJ's evaluation of Dr. Esce's opinion is not adequate. Wilkie argues that the opinion reflects that Dr. Esce reviewed other evidence, specifically an MRI and the two treatment notes from another doctor at his practice and that the ALJ fails to explain how internet usage for one to two hours a day, fishing and shopping, and Wilkie's treatment on a monthly basis refutes Dr. Esce's opinion. Wilkie concedes that the record reveals only a mild concentration limitation, but argues that such limitation is not inconsistent with Dr. Esce's finding that his pain causes frequent interruption in concentration. Finally, Wilkie argues that the ALJ gave weight to the opinions of the state agency doctors, even though at the time of their record reviews, they did not have all of the evidence in this record. Specifically, he argues that they did not have Dr. Esce's opinion or the records from Dr. Thomas Heil of Southeast Pain Care.

Upon review of the parties' arguments, the medical evidence, and the ALJ's decision, the court concludes that Wilkie has failed to demonstrate that the ALJ improperly applied 20 C.F.R. § 404.1527(d) in evaluating Dr. Esce's opinion. Dr. Esce's opinion reflects that, unlike the state agency doctors, one of which reviewed a majority of the record in this matter, he only reviewed a

couple of selective medical records in forming his opinion. See SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner). Further, the ALJ correctly points out that Dr. Esce appears to have only examined Wilkie on one occasion, over two years prior to his opinion.[7] See Mastro, 270 F.3d at 178 (finding that the record supported the ALJ's decision to give a treating physician's opinion little weight, in part because it was communicated one year after his last treatment of the plaintiff); 20 C.F.R. § 404.1527(d)(2)(I), (ii) (permitting an ALJ to consider the length, nature, and extent of the treatment relationship in evaluating a medical opinion). Moreover, Wilkie's arguments regarding his asserted limitations as compared to his daily activities seek to have this court re-weigh apparently inconsistent evidence, a task reserved for the ALJ, not this court. See Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. Accordingly, the court finds that Wilkie has failed to demonstrate that the ALJ's decision with regard to Dr. Esce's opinion is unsupported by substantial evidence or controlled by an error of law.

**B.     Residual Functional Capacity**

Wilkie also argues that the ALJ's residual functional capacity ("RFC") assessment fails to include all of Wilkie's relevant limitations. A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Social

---

[7] Contrary to Wilkie's assertion that this argument is *post hoc* rationalization by the Commissioner, the ALJ appears to rely on this reason. (Tr. 74.)

Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

> The ALJ found that Wilkie retained the RFC to
>
> perform less than the full range of light work as defined in 20 CFR 404.1567(b).  I find claimant can frequently lift 10 pounds, occasionally lift 20 pounds, and sit, stand, and walk for 6 hours each of an 8 hour work day.  I also find claimant can frequently kneel, crouch, crawl, balance, and climb ramps and stairs, and occasionally stoop and climb ladders, ropes, and scaffolds.  I further find claimant must avoid concentrated exposure to hazards.

(Tr. 70-71.)  Wilkie argues the record reflects additional limitations, such as (1) difficulty with stooping, bending, walking, and standing; (2) positive straight leg raises, decreased sensation in his lower extremities, and decreased range of motion with pain; and (3) limitations included in Dr. Esce's opinion and Wilkie's testimony.

Contrary to Wilkie's arguments, the court finds that the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence.  (Tr. 71-75; see also Tr. 68-70.)  The ALJ's discussion explained his resolution of inconsistencies or ambiguities in the evidence in the case record, such as his evaluation of Wilkie's subjective complaints as well as the medical opinions.  (Tr. 71-75.)  As discussed above, the ALJ determined that the opinions of Drs. LaTourette and Esce were entitled to no weight and inconsistent with other substantial evidence in the record.  Additionally, the ALJ found Wilkie's subjective allegations not fully credible.  Accordingly, the court finds that there is substantial evidence in the record to indicate that the ALJ properly considered and included Wilkie's relevant functional limitations in Wilkie's RFC.

**C.     New Evidence Submitted to the Appeals Council**

Wilkie next contends that the Appeals Council erred in failing to weigh new and material evidence submitted to it after the ALJ's decision.  That evidence consisted of counsel's brief in support of the appeal, medical records from Kings Mountain Hospital and Dr. Barnhill, an evaluation

and assessment from Dr. James N. Ruffing, and a questionnaire completed by Dr. Barnhill. The Appeals Council admitted into the record and considered a portion of the additional evidence, including Wilkie's Exhibits 16E (counsel's brief); 26F (medical records from Kings Mountain Hospital, dated March 18, 2009 through March 22, 2010); 27F (psychological evaluation by Dr. Ruffing, dated February 2, 2010); 28F (medical assessment of ability to perform work-related activities by Dr. Ruffing, dated February 2, 2010); and 29F (medical records from Dr. Barnhill, dated June 19, 2009 and July 17, 2009). The Appeals Council did not admit or consider the evidence consisting of medical records from Kings Mountain Hospital dated May 24, 2010 or the questionnaire from Dr. Barnhill dated May 11, 2010, finding that those items did not pertain to the relevant time period and therefore would not have affected the ALJ's decision.[8]

      The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.' " Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. When a claimant seeks to present new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

---

[8] Wilkie argues that the Appeals Council committed a factual error in finding that these items post-dated the relevant date. (Pl.'s Br. at 30, ECF No 16 at 30; Pl.'s Second Supp'l Br. at 8, ECF No. 29 at 8.) It appears that Wilkie may be resting this argument on his belief that the Appeals Council rejected *all* of the additional evidence on this basis; however, the court observes that the Appeals Council admitted and considered the records that related to the period prior to February 23, 2010. (See Order of Appeals Council, Tr. 6.)

During the pendency of this action, the United States Court of Appeals for the Fourth Circuit issued an opinion providing additional instruction with regard to additional evidence submitted to the Appeals Council. Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). The Court explicitly held that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision." Id. at 702. In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Id. at 704 (alterations in original) (quoting Wilkins, 953 F.2d at 96). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted. Meyer, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The Court recognized, however, that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence. See id. (discussing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

This is such a case. Here, the additional evidence considered by the Appeals Council included some 2009 medical records from Dr. Barnhill, Wilkie's treating physician, and Dr. Heil's records from Kings Mountain Hospital. It appears that the Appeals Council declined to consider Dr. Barnhill's questionnaire dated May 11, 2010 and a Kings Mountain record from May 24, 2010, finding that they did not relate to the relevant time period. See Wilkins, 953 F.2d at 96. Moreover, even if the Appeals Council had considered them, the court disagrees with Wilkie's argument that Dr. Barnhill's questionnaire cures the deficiencies identified by the ALJ with regard to the opinions

of Drs. LaTourette and Esce; rather, the court agrees with the Commissioner that it simply duplicated them. Dr. Barnhill's questionnaire, like the opinion of Dr. LaTourette, answers leading questions with virtually no explanation and is similarly unsupported by any treatment notes or other medical evidence. Moreover, the treatment notes from 2009 show that Wilkie was seen by Dr. Barnhill and Dr. Heil for check-ups and medication management purposes and provide no information that was not already included in the records before the ALJ. Similarly, although Wilkie argues that the additional evidence from Dr. Ruffing supports the opinions of Drs. LaTourette and Esce, he has failed to show how this consultative examination from Dr. Ruffing renders erroneous the ALJ's decision to reject those opinions in favor of other evidence in the record. Accordingly, the court disagrees that the additional evidence renders the Commissioner's decision unsupported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Wilkie has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_Paige J. Gossett_
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 3, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).